IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| J. W. BURRESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:07CV00310 |
| | ) | |
| JOHN DEERE CONSTRUCTION AND FORESTRY COMPANY, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JAMS/ENDISPUTE, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO JOHN DEERE CONSTRUCTION & FORESTRY COMPANY'S MOTION TO COMPEL ARBITRATION, DISSOLVE INJUNCTION AND TO STAY

Plaintiff J.W. Burress, Inc. ("JWB"), by counsel, submits this Memorandum in Opposition to Defendant John Deere Construction & Forestry Company's ("JDCFC") Motion to Compel Arbitration, Dissolve Injunction and to Stay.

### PRELIMINARY STATEMENT

JDCFC removed this action and filed a motion to compel arbitration in Chicago, Illinois, pursuant to the parties' Authorized Hitachi Dealer Agreement, a contract to be performed in Virginia. The Commonwealth regulates the contractual conduct of heavy equipment dealers and suppliers within its borders through the Heavy Equipment Dealer Act. JWB is a heavy equipment dealer as defined by the Act. The Act controls the terms and performance of the parties' Dealer Agreement and governs the only substantive issue to be arbitrated -- whether JDCFC reasonably refused to approve the transfer of JWB's ownership.

Woods Rogers PLC
ATTORNEYS AT LAW

Pursuant to this Virginia Act, arbitration of a dispute arising out of the Dealer Agreement must be held in Roanoke. JDCFC's demand to arbitrate in Chicago under Illinois substantive law contravenes the Heavy Equipment Dealer Act as well as the terms of the parties' Dealer Agreement. JDCFC suggests that the issues raised by JWB are subject to arbitration. They are not. JWB submits that this Court has jurisdiction and the power to enforce the Heavy Equipment Dealer Act because application of the Act and venue are not subject to arbitration but are mandated by the Act. JDCFC has attempted to subvert the law and its own contract with JWB by commencing arbitration in Chicago.

## BACKGROUND

JWB and JDCFC entered into an Authorized Hitachi Dealer Agreement ("Dealer Agreement") on or about June 20, 2003, pursuant to which a change in JWB's ownership or business structure required JDCFC's written approval. Compl. Ex. A, Ex. 1. On or about April 10, 2006, JWB notified JDCFC of its intent to sell the JWB corporation. *See* Compl. Ex. A, Ex. 2. On May 15, 2007, JWB informed JDCFC that it had entered into an Agreement and Plan of Merger with a potential buyer, and sought JDCFC's approval of the change in ownership. Compl. Ex. A, Ex. 7.

On May 16, 2007, JDCFC filed a Demand for Arbitration invoking the Dealer Agreement arbitration clause and requesting that JAMS/ENDISPUTE, LLC ("JAMS") set the matter for arbitration hearing in Chicago, Illinois. Compl. Ex. A ¶ 21. The Dealer Agreement arbitration clause provides, "arbitration shall be held at such location as required by applicable law or, if no location is required by applicable law, at Chicago, Illinois, or such other city as the parties to the Dispute may agree in writing." Compl. Ex. A, Ex. 1, p. 27, ¶ 2. JDCFC's Demand for Arbitration further sought a declaration that Illinois substantive law

applies to the parties' dispute. Compl. Ex. A ¶ 19. The Dealer Agreement arbitration clause provides that, "[u]nless contrary to applicable law, this Agreement shall be interpreted in accordance with and the arbitration panel shall apply and be bound to follow the substantive laws of the State of Illinois." Compl. Ex. A, Ex. 1, p. 27, ¶ 4. On May 29, 2007, JWB received correspondence from JAMS acknowledging the Demand for Arbitration filed by JDCFC and requesting payment of fees in order to commence arbitration proceedings as demanded by JDCFC. *See* Compl. Ex. B.

On May 31, 2007, JWB filed a Complaint in the Circuit Court for the City of Roanoke, seeking injunctive relief and a declaration that the arbitration of this matter be conducted in Virginia subject to the provisions of the Virginia Heavy Equipment Dealer Act, Virginia Code §§ 59.1-353 *et seq.* JWB filed a Motion for Preliminary Injunction, which was granted by the Circuit Court for the City of Roanoke on June 1, 2007.[1] On June 18, 2007, Defendants removed this action to the United States District Court for the Western District of Virginia pursuant to 28 U.S.C. §§ 1441, 1446. JDCFC filed a Motion to Compel Arbitration, Dissolve Injunction and to Stay on June 28, 2007. JWB submits this Memorandum in response to JDCFC's Motion. For the reasons set forth herein, JWB requests that the Court deny JDCFC's Motion and declare that the Virginia Heavy Equipment Dealer Act applies to this dispute.

## **QUESTION PRESENTED**

Whether the Virginia Heavy Equipment Dealer Act applies to a dispute between JWB and JDCFC arising out of the parties' Authorized Hitachi Dealer Agreement?

---

[1] Defendant JAMS/ENDISPUTE, LLC has delayed setting arbitration proceedings until August 1, 2007, pursuant to the preliminary injunction granted by the state court.

## ARGUMENT AND AUTHORITIES

**I.    THE VIRGINIA HEAVY EQUIPMENT DEALER ACT GOVERNS THE AUTHORIZED HITACHI DEALER AGREEMENT.**

Virginia has the power to regulate the contractual conduct of heavy equipment dealers and suppliers occurring within its borders.  The Commonwealth exercises this power through the Virginia Heavy Equipment Dealer Act, which was in effect at the time the Dealer Agreement was executed.  JDCFC's contacts with the Commonwealth subject it to Virginia's regulatory jurisdiction, and the Heavy Equipment Dealer Act applies to the Agreement at issue in this case.  As a result, the arbitration of a dispute arising out of the Dealer Agreement must be held in Roanoke, Virginia, pursuant to the Act.

**A.    *Virginia has the power to regulate contractual conduct occurring within the boundaries of the Commonwealth through the Heavy Equipment Dealer Act.***

While the United States Constitution grants Congress the power to regulate matters involving interstate commerce, U.S. Const. Art. I, § 8, cl. 3, states have the power to enact laws directed to legitimate local concerns where the effect upon interstate commerce is incidental.  In the absence of federal legislation, subjects of potential federal regulation are open to control by the states so long as they act within the constraints imposed by the Commerce Clause itself. *See, e.g., City of Philadelphia v. New Jersey,* 437 U.S. 617, 623-25 (1978).

The Fourth Circuit Court of Appeals articulated the test for determining whether a state law violates the Commerce Clause in *Star Scientific, Inc. v. Beales*, 278 F.3d 339, 355 (4th Cir. 2002), *cert. denied,* 537 U.S. 818 (2002).  It held that the Court is to consider (1) the nature of the local benefits advanced by the statute; (2) the burden placed on interstate

WOODS ROGERS PLC
ATTORNEYS AT LAW

commerce by the statute; and (3) whether the burden is "clearly excessive" when weighed against these local benefits. *Id.* at 357.

JDCFC does not maintain that the Virginia Heavy Equipment Dealer Act violates the Commerce Clause, because it simply cannot do so. Virginia, with the limitations set out above, has the power to regulate the conduct of business within its borders. The Heavy Equipment Dealer Act does not prefer Virginia citizens over others but simply puts in place a procedure for dealing with succession in dealers. It does not dictate an outcome.

> 1.    *JDCFC has sufficient business contacts with the Commonwealth through the parties' Dealer Agreement to subject it to Virginia's regulatory jurisdiction.*

A state's power to regulate the contractual conduct of nonresidents depends on the nonresidents' contacts with the state and the nature and extent of the state's interest in exercising its authority. *See Underhill Assoc., Inc. v. Bradshaw*, 674 F.2d 293 (4th Cir. 1982); *see, e.g., Osborne v. Ozlin*, 29 F. Supp. 71 (E.D. Va. 1939) (finding a Virginia statute affecting production of out-of-state contracts issued by companies licensed to conduct business in the state was constitutional exercise of police power of state), *aff'd*, 310 U.S. 53 (1940). The transaction must involve sufficient contacts with the state to warrant compliance with its regulatory scheme. *Life Partners, Inc. v. Miller,* 420 F. Supp. 2d 452, 464 (E.D. Va. 2006), *aff'd*, 484 F.3d 284 (2007). A contractual choice of law provision does not divest a state of its regulatory jurisdiction over transactions involving its residents occurring within its borders. *Id.* at 462.

For example, in *Life Partners,* a contract for the sale of a $115,000 life insurance policy by a terminally-ill Virginia resident to an investment group for a total price of $29,900 specified that Texas law applied to the transaction. 420 F. Supp. 2d at 458. The agreement

was signed by seller in Virginia and returned to the buyer in Texas, where it was countersigned. *Id.* at 458.  Subsequent to the execution of the agreement, seller demanded payment of a minimum price of $69,000 for her policy, as prescribed by the Virginia Viatical Settlements Act. *Id.* at 458.  Buyer declined, citing the provisions of the agreement designating Texas law as controlling. *Id.* at 458.

The court held that the transaction involved sufficient contacts with Virginia to give the Commonwealth regulatory jurisdiction over the parties' contract. *Id.* at 464.  The court noted that the transaction involved a Virginia resident who placed and received calls concerning the agreement in Virginia; never left the Commonwealth during negotiations; received multiple settlement agreements in Virginia for review; and signed the final agreement in Virginia. *Id.* at 464.  According to the court, such contacts warrant compliance with Virginia's regulatory scheme, so long as the underlying statute - the Virginia Viatical Settlements Act -is constitutionally sound. *Id.* at 464.  A Commerce Clause analysis established the constitutionality of the Virginia Viatical Settlements Act. *Id.* at 460-70.

Similarly, the transaction between JWB and JDCFC gives Virginia regulatory jurisdiction over the parties' Dealer Agreement.  The Dealer Agreement authorizes JWB to distribute JDCFC's heavy equipment products in the Commonwealth. Compl. Ex. A, Ex. 1. JWB sells and leases heavy equipment at retail under the JDCFC commercial symbol from its Roanoke location. Affidavit of Richard S. Dudley [hereinafter Dudley Affidavit] ¶ 1; *see* Va. Code Ann. § 59.1-353.  JWB also provides repair services in Virginia for the JDCFC machinery sold.  Dudley Affidavit ¶ 4; *see* Va. Code Ann. § 59.1-353.

JDCFC appointed JWB its dealer in the Commonwealth of Virginia to carry out its business in Virginia and ships its products for sale in Virginia to JWB; thus, Virginia has an

interest in regulating the terms and performance of the contract. *See Atlantic Machinery & Equipment, Inc. v. Tigercat Industries, Inc.*, 427 F. Supp. 2d 657, 666 (E.D. Va. 2006) ("The state's interest is magnified when the contract in question also involves conduct between the parties of an on going nature which also occurs within the state's borders."). By its very terms, the Heavy Equipment Dealer Act requires sufficient contacts with the Commonwealth to give Virginia regulatory power. *See* discussion, *infra,* Part I.B.

Furthermore, Virginia courts have upheld the constitutionality of the Heavy Equipment Dealer Act.[2] *See id*. at 669; *see also* discussion, *supra*, Part I.A. Therefore, the parties' Dealer Agreement must comply with Virginia's regulatory scheme, regardless of the choice of law provision contained in the contract. *See Life Partners,* 420 F. Supp. 2d at 464 ("The choice of law provisions contained in the [Dealer] Agreement do not change this result.").[3]

The issues before the Court in the instant case are also similar to those presented in *Atlantic Machinery*. In *Atlantic Machinery*, a heavy equipment dealer brought an action alleging manufacturer Tigercat Industries wrongfully terminated its dealer agreement with Atlantic. 427 F. Supp. 2d at 660. The language of the parties' agreement permitted either party to terminate with or without cause upon sixty (60) days written notice, and permitted communications to be delivered by courier, fax or email. *Id.* at 661. In contrast, the Virginia Heavy Equipment Dealer Act requires written notice at least one hundred and twenty (120)

---

[2] JDCFC does not challenge the constitutionality of the Virginia Heavy Equipment Dealer Act.

[3] Note, however, that even the choice of law provision in the parties' Dealer Agreement upon which JDCFC relies states that the arbitration panel shall apply Illinois law *unless contrary to applicable law*. Compl. Ex. A, Ex. 1, p. 27, ¶ 4 (emphasis added); *see* discussion *infra* Part I.C.

WOODS ROGERS PLC
ATTORNEYS AT LAW

days in advance of termination and dictates that such notice must be sent via certified or registered mail. *Id.* at 661.

Despite the fact that elements of the transaction occurred outside the Commonwealth, the court held that Virginia was not deprived of its interest in regulating the parties' transaction, as the conduct between the parties within its borders was of an on-going nature. *Id.* at 666. After finding the Virginia Heavy Equipment Dealer Act did not violate the United States or Virginia Constitution, the court next addressed the question of whether the defendant's termination of the dealer agreement comported with the requirements of the Heavy Equipment Dealer Act. *Id.* at 669. The court concluded that the Virginia Heavy Equipment Dealer Act "fully governs the [Dealer] Agreement entered into by the parties," and defendant's attempted termination of the Agreement did not comply with the notices required by the Act and therefore was invalid. *Id.* at 670.

    2.    *The* John Deere Construction Equipment Co. v. Wright Equipment Co., Inc. *opinion does not control the outcome of this case.*

The decisions in *Life Partners* and *Atlantic Machinery* confirm that the Commonwealth can regulate the parties' contractual conduct via the Virginia Heavy Equipment Dealer Act. However, JDCFC ignores the principles contained in the recent decisions of *Life Partners* and *Atlantic Machinery*, and instead relies on the earlier decision of *John Deere Construction Equipment Co. v. Wright Equipment Co.*, Inc., 118 F. Supp. 2d 689 (W.D. Va. 2000) to support its position.

In *Wright Equipment*, Wright disputed Deere's decision to terminate Wright's appointment as an authorized dealer, arguing the Virginia Heavy Equipment Act precludes termination without cause. 118 F. Supp. 2d at 691. Deere asserted that the Act did not apply

WOODS ROGERS PLC
ATTORNEYS AT LAW

because the contracts were governed by Maryland law. *Id.* The court examined Virginia's choice of law rules to determine which substantive law to apply, and noted that in the Commonwealth, the nature, validity and interpretation of a contract is governed by the law of the place where it was made. *Id.* at 692. While matters of contract performance are to be considered under the law of the place of performance, the court explained that "Wright does not argue, however, that the application of the Virginia Act involves a question of contract performance. Its argument is one of contract validity." *Id.* at 693. The court held the correct choice of law was that of Maryland. *Id.* at 693.

JDCFC asserts that because this is a diversity case, the Court must follow the decision of *Wright Equipment* and engage in a choice of law analysis. According to JDCFC, Illinois is the state in which the contract was executed; therefore, Illinois law governs issues of validity in this matter. Although JDCFC claims the two cases are analogous, the matter currently before this Court contains vastly different factual and procedural circumstances than those present in *Wright Equipment*.

The dealer agreements in *Wright Equipment* were executed in 1984, and the Virginia Heavy Equipment Dealer Act did not become effective until January 1, 1988. The Dealer Agreement in this case was executed by the parties in 2003, well after the Virginia Heavy Equipment Dealer Act became effective. It is noteworthy here that JDCFC has not advanced the argument that it did in *Wright Equipment* that the Virginia Heavy Equipment Dealer Act violates the Contract Clause of the United States Constitution. JDCFC is now dealing with statutes that it was very much aware were in place when it entered into the Dealer Agreement with JWB in 2003.

Also, the contracts at issue in *Wright Equipment* did not contain a choice of law provision. JWB and JDCFC did, however, include such a provision in their Dealer Agreement. That provision states: *"[u]nless contrary to applicable law,* this Agreement shall be interpreted in accordance with and the arbitration panel shall apply and be bound to follow the substantive laws of the State of Illinois." Compl. Ex. A, Ex. 1, p. 27, ¶ 4 (emphasis added). Thus, this Court should not engage in a conflicts of law analysis. The Commonwealth of Virginia has constitutionally set the rules for dealing with dealer succession. Moreover, the parties' Agreement provides for the law to be applied, recognizing the potential for inconsistent controlling law. The Virginia Heavy Equipment Dealer Act is that controlling law.

If the Court applies the reasoning in *Wright Equipment* to this case, a manufacturer could simply avoid the Virginia Heavy Equipment Dealer Act by requiring a dealer to step into another state to execute a dealer agreement, or by stipulating that the contract is to be deemed made in the state where the manufacturer executes the agreement. Other Virginia statutes governing the relationship between suppliers and dealers (such as motor vehicle dealers and wine and beer wholesalers) could be avoided by executing agreements outside Virginia. The *Wright Equipment* decision is anomalous, based on the peculiar facts at issue and the manner in which the case was presented to the court by the litigants.

The anomalous nature of *Wright Equipment* is further highlighted by the United States District Court for the Eastern District of Virginia's 2006 decision in *Atlantic Machinery*, in which the court found that the Virginia Heavy Equipment Dealer Act did apply under circumstances similar to the case at hand. In so holding, the court did not refer to or attempt to distinguish the opinion in *Wright Equipment*.

Notwithstanding JDCFC's arguments to the contrary, *Wright Equipment* is inapposite. Virginia has the constitutional power to regulate the terms and performance of transactions within its borders, and it has done so by enacting the Virginia Heavy Equipment Dealer Act.  Pursuant to the Act, any arbitration arising out of a dealer agreement must be held consistent with its provisions.

**B.      The Authorized Hitachi Dealer Agreement falls within the purview of the Virginia Heavy Equipment Dealer Act.**

Courts have held that Virginia has the power to regulate contractual conduct involving interstate commerce, so long as there are sufficient transactional contacts with the Commonwealth.  Virginia exercises its power in the context of heavy equipment dealerships through the Heavy Equipment Dealer Act.  The Dealer Agreement at issue in this case falls within the purview of the Act, as it involves a commercial relationship between a supplier and a dealer pursuant to which the dealer has been authorized to distribute one or more of the supplier's heavy equipment products, and to use a trade name, trademark, or other commercial symbol in connection therewith. Va. Code Ann. § 59.1-353.

JWB is a "dealer," as defined by the Heavy Equipment Dealer Act, as it is a Virginia corporation (i) engaged in the business of selling or leasing heavy equipment at retail, (ii) who customarily maintains a total inventory, valued at over $250,000, of new heavy equipment and attachments and repair parts therefore, and (iii) who provides repair services for the heavy equipment sold. Va. Code Ann. § 59.1-353.  JDCFC is a "supplier," as defined by the Heavy Equipment Dealer Act, as it is an entity that has entered into an agreement with a dealer. Va. Code Ann. § 59.1-353.

C.    **The Heavy Equipment Dealer Act governs the terms and performance of the Dealer Agreement and requires arbitration of any dispute to be held in Roanoke, Virginia.**

The Virginia Heavy Equipment Dealer Act states, "[t]he provisions of this chapter shall be deemed to be incorporated in every agreement subject hereto and *shall supersede and control all other provisions of the agreement inconsistent herewith*." Va. Code Ann. § 59.1-360 (emphasis added).  The Act supersedes all contractual provisions which are contrary to its terms.  The Dealer Agreement itself recognizes the potential for inconsistent controlling law, as it provides that,*"[u]nless contrary to applicable law,* this Agreement shall be interpreted in accordance with and the arbitration panel shall apply and be bound to follow the substantive laws of the State of Illinois." Compl. Ex. A, Ex. 1, p. 27, ¶ 4 (emphasis added).  The applicable law in this case, the Virginia Heavy Equipment Dealer Act, governs the only substantive issue to be arbitrated–  whether JDCFC has reasonably refused to consent to the transfer of ownership control of JWB to H&E Equipment Services, Inc.

According to the Virginia Heavy Equipment Dealer Act, the arbitration of a dispute between a heavy equipment dealer and supplier must be held in the city or county in which the dealer maintains its principal place of business. Va. Code Ann. § 59.1-358.  JWB's principal place of business lies in the City of Roanoke, Virginia.  The Dealer Agreement directs that "arbitration shall be held *at such location as required by applicable law* or, if no location is required by applicable law, at Chicago, Illinois . . . ." Compl. Ex. A, Ex. 1, p. 27, ¶ 2 (emphasis added).  JDCFC invokes the Federal Arbitration Act (9 U.S.C. §§ 1-16) and, among other case authority, *Glass v. Kidder Peabody & Co., Inc.,* 114 F.3d 446 (4th Cir. 1997), to demand that the parties proceed to arbitration in Chicago under Illinois substantive law.  The contract just does not support that proposition, and JDCFC is attempting to subvert

the law by improperly proceeding in Chicago and submitting an issue to arbitration which is already decided. *Glass*, after reviewing the evolution of arbitration under federal law, points out that the court has the power to determine if the subject matter is arbitrable under the agreement. 114 F.3d at 453. The arbitrator rules on the merits of the subject matter. *Id.* What JWB seeks here conforms to the requirements of the Federal Arbitration Act.

Virginia has the power to regulate JDCFC's contractual conduct within its borders via the Heavy Equipment Dealer Act. JWB is a heavy equipment dealer as defined by the Act. Thus, the arbitration of this matter must be held in Roanoke, Virginia consistent with the provisions of the Act.

**II.    JDCFC'S DEMAND FOR ARBITRATION IS AN AFFRONT TO THE GOVERNING HEAVY EQUIPMENT DEALER ACT, AND THE COURT SHOULD NOT COMPEL JWB TO PROCEED TO ARBITRATION IN THE MANNER DEMANDED BY DEFENDANT.**

JWB agrees that the parties' dispute is subject to arbitration. However, the Virginia Heavy Equipment Dealer Act applies to the Dealer Agreement and thus any arbitration arising out of the contract must be held consistent with the provisions of the Act. JDCFC ignores the terms of the Act by demanding this case proceed to arbitration in Chicago, Illinois under Illinois substantive law. Thus, the Court should not compel arbitration of this matter in the manner demanded by JDCFC.

**A.    *JWB does not contest the arbitrability of the parties' dispute, but rather the manner in which JDCFC seeks to proceed to arbitration.***

JWB does not contest the fact that this matter should proceed to arbitration. JWB will submit to arbitration. However, before doing so, JWB seeks a declaration that the Virginia Heavy Equipment Dealer Act applies. JDCFC's Demand for Arbitration completely ignores the Act.

JDCFC seeks to proceed to arbitration and leave the determination of what law applies to the arbitration panel in Chicago. The Virginia Heavy Equipment Dealer Act clearly requires any arbitration to be held in Roanoke. JDCFC ignores Virginia's right to regulate contractual conduct within its borders, and its demand for arbitration completely disregards the proper mechanism for holding arbitration pursuant to the parties' Dealer Agreement.

The parties' contractual conduct is governed by the Act. The Act designates an arbitration venue and sets forth the rights and remedies with respect to the only substantive issue to be arbitrated. Nevertheless, JDCFC attempts to hijack the proceedings and drag the parties to arbitration in Chicago when the Dealer Agreement and the Heavy Equipment Dealer Act make plain that the arbitration must be held in Roanoke. JWB is not asking the Court to relieve it from its obligation to arbitrate this dispute. Rather, JWB requests that the Court find that arbitration of this matter be held pursuant to the governing statute and the Dealer Agreement.

**B.      *JWB meets the requirements for injunctive relief in federal court.***

Finally, the Court should not compel arbitration in the manner demanded by JDCFC but rather enjoin arbitration proceedings until the Court can rule on the applicability of the Virginia Heavy Equipment Dealer Act. JWB has satisfied the standard for injunctive relief in federal court, as outlined in *Blackwelder Furniture Co. v. Selig Mfg. Co.*, 550 F.2d 189, 193-96 (4th Cir. 1977), and is entitled to preliminary injunctive relief because: (1) Plaintiff would suffer irreparable harm without a preliminary injunction; (2) Defendants would not be substantially harmed thereby; (3) Plaintiff has a substantial likelihood of success on the

W OODS R OGERS PLC
ATTORNEYS AT LAW

merits of its declaratory judgment claim; and (4) the public interest favors issuance of the injunction.

JWB will suffer irreparable harm if it is required to arbitrate this matter in Chicago and the Virginia Heavy Equipment Dealer Act is disregarded. Judicial review of arbitration awards is extremely limited. *United States Postal Service v. American Postal Workers Union, AFL-CIO,* 204 F.3d 523, 527 (4th Cir. 2000); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. Transp. Commc'ns Int'l Union,* 973 F.2d 276, 278 (4th Cir. 1992) ("[J]udicial review of an arbitration award is among the narrowest known to the law." (internal quotation marks and citation omitted)); *United Government Security Officers of America v. Special Operations Group, Inc.*, 436 F. Supp. 2d 790, 793 (E.D. Va. 2006) ("A court's ability to review an arbitrator's decision is limited."); *United States ex rel. Watkins v. AIT Worldwide Logistics, Inc.*, 441 F. Supp. 2d 762, 766 (E.D. Va. 2006) ("To encourage the use of arbitration as an alternative to formal litigation, judicial review of an arbitral award is exceedingly narrow.").

A court sits to "determine only whether the arbitrator did his job-not whether he did it well, correctly, or reasonably, but simply whether he did it." *American Postal Workers Union*, 204 F.3d at 527 (quoting *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union,* 76 F.3d 606, 608 (4th Cir. 1996), *cert. denied*, 519 U.S. 822 (1996)). Indeed, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). Thus, the damage JWB will suffer if required to arbitrate pursuant

to JDCFC's demands is difficult, if not impossible, to assess and JWB has no adequate remedy at law.

JDCFC will suffer little, if any, harm by delaying arbitration proceedings just until the Court can rule on the applicability of the Virginia Heavy Equipment Dealer Act. *See Leesona Corp. v. Cotwool Mfg. Corp.,* 315 F.2d 538, 541 (4th Cir. 1963) (upholding a temporary stay of arbitration as being within the Court's discretion, as the order did not interfere with the contractual right of the parties to arbitrate, but merely postponed arbitration proceedings). Additionally, JWB has a strong likelihood of success on the merits of its declaratory judgment action for the reasons set forth herein. Finally, injunctive relief furthers the public interest in this case by not only preventing JDCFC from violating Virginia law but protecting JWB's rights as a Virginia Heavy Equipment Dealer.

Therefore, enjoining the arbitration proceedings until the Court rules on the merits of this case is appropriate under the circumstances.

## <u>CONCLUSION</u>

The Virginia Heavy Equipment Dealer Act controls the terms and performance of the parties' Dealer Agreement. Yet JDCFC disregards the Act and demands that arbitration of this dispute be held in Chicago pursuant to Illinois substantive law. JWB does not seek to evade arbitration. However, the Court should not compel arbitration in the manner demanded by JDCFC and allow defendant to completely ignore the proper mechanism for holding arbitration pursuant to the parties' Dealer Agreement and the governing law. For these reasons, JDCFC's Motion to Compel Arbitration, Dissolve Injunction and to Stay should be denied and the Court should rule that the arbitration proceed in Roanoke subject to the provisions of the Virginia Heavy Equipment Dealer Act.

WOODS ROGERS PLC
ATTORNEYS AT LAW

Respectfully submitted,

J.W. BURRESS, INC.

By: /s/ James W. Jennings, Jr.
        Of Counsel

James W. Jennings, Jr. (VSB #12727)
Frank K. Friedman (VSB # 25079)
Kristin B. Johnson (VSB #71115)
WOODS ROGERS PLC
Wachovia Tower, Suite 1400
10 South Jefferson Street
P.O. Box 14125
Roanoke, Virginia  24038-4125
(540) 983-7600

        Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of July, 2007, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system Notice of this filing will be sent to all counsel who are participants in the CM/ECF system by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

A copy of the foregoing was also served this 12th day of July, 2007, via first-class mail, upon the following non-participants in the CM/ECF system:

JAMS/ENDISPUTE, LLC
c/o Julie Sager, Agent
1920 Main Street
Suite 300
Irvine, CA 92614

WOODS ROGERS PLC
ATTORNEYS AT LAW

/s/ James W. Jennings, Jr.